(No. 13756.—Decree affirmed.)

MILES F. LOUNSBERRY *et al.* Appellants, *vs.* OTTO C. DEVERMAN *et al.* Appellees.

*Opinion filed October 22, 1921.*

1. SPECIFIC PERFORMANCE—*when alleged oral contract to execute a will cannot be enforced.* An alleged oral promise to devise to complainants all the promisor's estate in consideration for services to be rendered by both of them in taking care of the promisor's farm will not be enforced where it is proved that after the making of the alleged promise the promisor entered into a written lease of said farm to one of the complainants.

2. SAME—*when unattested will is not a sufficient memorandum of oral promise to devise estate to complainants.* In a suit against the heirs of a deceased person to compel the specific performance of an alleged oral promise by the deceased to devise all his estate to the complainants, as tenants in common, if they would take care of his farm and render personal services, an unattested will by which the deceased gave one of the complainants $5000 in money

and gave all the rest of his estate to the other, but which makes no reference to any contract, is not such a memorandum of the oral contract as will take it out of the Statute of Frauds.

3. SAME—*what performance is required to take contract out of Statute of Frauds.* To take an oral contract for a conveyance out of the Statute of Frauds on account of performance, all acts of the alleged performance must be clear and definite and referable exclusively to the contract.

APPEAL from the Circuit Court of Menard county; the Hon. GUY R. WILLIAMS, Judge, presiding.

THOMAS D. MASTERS, for appellants.

EDWARD H. GOLDEN, ARTHUR LILIENSTEIN, and WILLIAM L. PATTON, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Miles F. Lounsberry and Arthur C. Lounsberry, appellants, filed their bill of complaint in the circuit court of Menard county against Otto C. Deverman, Harry Deverman, John Deverman, Mary Deverman, Charles E. Deverman, Minnie Messett, Otto Ricker, Fritz Ricker, the unknown heirs of Fritz Ricker, deceased, Ethyl Sapp, Elmer R. Sapp, Frank E. Blaine, executor, and Harry J. Aden, administrator with the will annexed of the estate of Fritz Ricker, deceased, appellees, praying for the specific performance of an oral contract alleged to have been made by Fritz Ricker to will to appellants all of the land and personal property of which he should died seized or possessed. Four of the Devermans and Minnie Messett filed their answers to the bill, and also a cross-bill to have the probated will declared null and void. Ethyl Sapp also answered the bill. Said answers admitted the allegations as to the death of Ricker, the heirship of certain of the appellees and the residence of the appellants but denied that Ricker made the oral agreement set forth in the bill, and averred that if he

did, it was made in contravention of the Statute of Frauds, as it related to real estate. Frank E. Blaine, executor, and Harry J. Aden, administrator, filed answers in the nature of disclaimers and set forth the refusal of Blaine to qualify as executor. The other appellees made default. General replications were filed by the appellants to all of the answers. The hearing on the cross-bill was postponed until the determination of the matters raised by the bill of appellants. On a hearing of the original bill the court entered a decree dismissing it for want of equity, and complainants have perfected their appeal to this court.

Fritz Ricker, the deceased testator, was a bachelor, who for several years lived upon a farm of 140 acres of land situated a few miles south of the village of Oakford, in Menard county. He came to this country from Germany. He had no immediate relatives. The Devermans and Minnie Messett are cousins of the second degree and lived in Menard county. There are certain other persons residing in the city of New York who are distant relatives of Ricker and were made parties defendant to the bill. The alleged oral contract of the deceased with the appellants was testified to by J. C. Lounsberry, their father, who was also a farmer and owned land adjacent to the farm of Ricker. His testimony, in substance, is, that in the autumn of 1914 appellants became tenants of Ricker and rendered him various services; that Ricker became fond of them, and that in September, 1915, Ricker in witness' presence proposed to appellants that if they would look after his farm and the division of grain rent with him, deposit the money received for it in the bank, look after him, carry to him his mail and eatables, assist him in transacting his business and care for him when he became old until his death, he would make a will wherein and whereby he would bequeath and devise to them his entire estate; that in witness' presence appellants accepted the proposal of Ricker, and then agreed that in consideration of Ricker bequeathing and devising

to them by will his entire estate, they would, so long as Ricker might live, render to him personal services, care for him in his old age and transact his aforesaid business for him; that thereafter, from September, 1915, until the death of Ricker, September 25, 1918, appellants did care for him, minister to his personal wants, transact his business for him, and that from time to time Ricker stated to witness that he was pleased with the appellants and proposed to carry out his promise. He further testified that in December, 1917, Ricker directed the witness to carry notes relative to the distribution of his property to L. A. Whipp, a practicing lawyer located at Petersburg, in said county, with instructions to witness to cause Whipp to prepare in proper form Ricker's last will and testament for Ricker's execution; that in pursuance of such instructions from Ricker he took the notes or memoranda to Whipp, and that Whipp in pursuance thereof, and in the absence of Ricker, prepared such last will and testament as directed by Ricker. The further evidence for the appellants in relation to the will is, that after it was prepared by Whipp, Ricker signed it in the presence only of J. C. Lounsberry. Lounsberry then delivered the will to appellants, signed by Ricker but not witnessed. It is claimed by appellants that they, ignorant of the laws of Illinois relating to the execution of wills, caused two persons out of the presence of the deceased to sign the will as witnesses. The evidence actually shows that the witnesses were about ten miles from the deceased when they signed the will, and that one of them signed it in the water-closet of the court house, in Petersburg. The alleged will, conceded by appellants to have no force and effect as a will, was offered in evidence in corroboration of the testimony of J. C. Lounsberry and as a memorandum in writing sufficient to satisfy the Statute of Frauds.

One other witness, Hardy Lounsberry, was offered in corroboration of the testimony of J. C. Lounsberry, and

testified, in substance, that previous to the year 1914 he had been a tenant of Fritz Ricker; that during his tenancy Ricker proposed to him that if he would enter into an agreement to care for Ricker during the remaining portion of his life, and in general to do the things proposed to appellants by Ricker, he (Ricker) would make a will in the witness' favor, therein devising to him his farm of 140 acres. This witness stated that the things he was to do for Ricker in consideration that he would will witness his farm were, that he would operate the farm, pay Ricker grain rent and take care of him and his farm during his lifetime. He testified that in accordance with the agreement Ricker told him he had prepared such a will in May, 1915, and asked him what should be done with it, and that he told him that he (the witness) could not comply with the terms of the will and for him to burn it. He testified, also, that Ricker said to him that he wanted to get up a similar paper or will for appellants, and that they were to render personal services the same as witness had agreed to render to him.

An examination of the testimony in the record demonstrates clearly that the circuit court properly dismissed the bill of appellants for want of equity. If it be conceded that the oral contract as testified to by their father was entered into understandingly on the part of the deceased and by appellants, their testimony tends strongly to show that the contract was abandoned or afterwards changed and replaced by a written contract or lease, and that the deceased was under no obligation, any time after the year 1917, to execute a will in accordance with the terms of the oral agreement; also, that the oral contract was not binding and was within the Statute of Frauds, and that the will signed by Ricker in favor of appellants contained no written memorandum of the oral contract sufficient to take it out of the Statute of Frauds. Ricker, apparently acting upon the belief that he was under no obligation to

299—32

execute such a will, on September 17, 1918, executed a will in favor of Ethyl Sapp, wife of Arthur Sapp, by which he directed the payment of all his just debts and the erection of a monument at his grave to cost not exceeding the sum of $500, and to Ethyl Sapp he bequeathed and devised all the remainder of his estate, real and personal, wherever situated, to have and to hold the same forever. This is the will in which Frank E. Blaine was named as executor. The evidence in the record shows that the testator removed from his home to the home of Ethyl for the purpose of being cared for and treated for a severe illness, of which he died September 25, 1918. This will has been duly probated in said county and litigation is now pending as to its validity under the cross-bill already mentioned.

By the unattested will introduced in evidence for appellants the testator gives and bequeaths, after payment of all his debts and funeral expenses, including a suitable monument to be placed at his grave such as his executor shall think proper and suitable, "to my friend, Arthur C. Lounsberry, the cash sum of $5000, to have and to hold the same as his own forever, the said sum to be given to him being for his kindness, care and attention to me in the past and his promise for the future." He then devises to "my friend, Miles F. Lounsberry," all of his land and also three lots in Armstrong's addition to Oakford, in said county, to have and to hold the same forever, and also gives and devises and bequeaths to him all other real estate and all the rest and residue of his property, of every kind and character. The will then expresses that he devised and bequeathed such remainder of his real and personal estate to Miles F. Lounsberry for the reason that he had for many years past been very kind to the testator and looked after him and his interests, and attended to his business many times when the testator was not able to do so himself, and for his promise to care for the testator and look after his land thereafter. The will also contains this para-

graph: "Excepting that in the case of my being married hereafter I direct that this will shall become null and void and the legatees above mentioned to have such part of the estate as shall be shown just and right." This will recognizes no contract obligation on the part of the testator. No contract is mentioned, and nowhere in the will is it stated or recognized that there is any obligation whatever on the part of the testator to make a will in favor of the legatees and devisees therein. As just seen, the will even declares that it shall become null and void in case of his marriage, and that the legatees and devisees shall only receive such part of his estate as shall be shown to be just and right. This will contains no such memorandum of the alleged oral contract as will take it out of the Statute of Frauds. The will does not follow or purport to follow the oral contract offered in evidence. The evidence shows that the real estate of which the testator died seized was of the value of more than $15,000 and his personal property of the value of $13,000. According to the oral contract testified to by the father of appellants, both appellants were to perform the services required of them by the alleged oral contract, and for the services performed by both of them Ricker was to will to them all of his property, of every kind and character. Such a contract would necessarily be interpreted that they were to enjoy and become the owners of all of his property by his will equally, as tenants in common. The unattested will offered in corroboration of the oral contract devises to one of the appellants only the sum of $5000 in money, and gives all of the remainder, amounting to $23,000 or more, to the other appellant. The evidence further shows that on the day before the unattested will was signed by the testator he entered into a written lease, by which he leased his entire farm to Miles F. Lounsberry for the term of five years. In this lease the lessee covenants to pay as rent one-half of all corn raised on the premises, to be husked and delivered on the premises or

in Oakford, as the lessor might elect, and for all wheat so raised two-fifths of the grain to be delivered at Oakford, and the lessee was to furnish all seed for planting. The lease also specifies a certain part of all other small grains and all clover raised on the farm to be delivered to the lessor for rent. This lease contains the ordinary covenants by the lessee against sub-letting, and that the lessee will yield up the premises to the lessor at the end of the term without further notice, in as good condition as they were when rented to the lessee, and further provides that in case of the failure to pay rent, etc., it shall be lawful for the lessor or his legal representatives to re-enter and take possession, etc.

The aforesaid lease is not at all in harmony with the oral contract, but, on the other hand, is entirely against the provisions of such contract with reference to the farm. Farming this land and looking after it and delivering grain as rent was part of the obligation of both of the appellants under the oral contract, while under the lease the contract is between Ricker and only one of the appellants. The evidence shows that the services performed on the part of appellants for Ricker, outside of what they were actually paid for by him, were rather of an insignificant character, and almost all were performed by Miles F. Lounsberry. They consisted of carrying the mail of the testator about once a week to him from Oakford to his home, a distance of about three miles, and of occasionally carrying him groceries and other articles of food from Oakford, which were paid for by the testator to the merchants from whom they were gotten. At one time Miles F. Lounsberry assisted in computing Ricker's income taxes to the government and in making a report of the same. It shows, also, that during about one week he cut stovewood for him while he was at home and unable to do this for himself. He usually received no mail except newspapers. Appellants occasionally carried his laundry back and forth from Oakford, and they de-

posited wheat rent money in the bank after they had sold the wheat for him at the market. It is clear from the record that appellants furnished Ricker nothing in the way of supplies that he did not pay for with his own money except a few garden vegetables, such as potatoes, lettuce, and other vegetables raised in the garden on Ricker's farm, except occasionally they carried him bread baked in appellants' homes. The evidence further shows that Ricker lived on the farm by himself from 1915 until his death, and that appellants only rendered him a small amount of service in personal attendance during any illness. He was never cared for at their homes or at their expense, and the evidence warrants the conclusion that Ricker paid for every article that was bought for him, with the possible exception of some vegetables and baked bread, as aforesaid. He transacted nearly all of his business himself outside of farming and until very shortly before he died, and for such purposes went to the town of Oakford, his business point, almost weekly. He himself drew all of his personal checks on his bank, and he watched the bank carefully to see that all of his rent money for grain sold by appellants was deposited in the bank by them. After the unattested will was signed he employed Miles F. Lounsberry to collect notes for him and paid him for his services. In two instances in which he so collected notes amounting to several thousand dollars he received one-half of what he collected for his services. At his death Miles F. Lounsberry owed him large sums for moneys so collected for him and for crop rent sold belonging to the testator and which he failed to turn over to or deposit in the bank for Ricker.

The foregoing clearly shows that there has been no such part performance of the oral agreement in question as will take it out of the Statute of Frauds. To take such a contract out of the Statute of Frauds on account of performance all acts of such alleged performance must be clear and definite and referable exclusively to the contract. (*Weir*

v. *Weir,* 287 Ill. 495.) The lower court was warranted in the conclusion that if the oral contract in question was made in 1915 the parties thereto abandoned it in 1917, and that Ricker and his tenant, Miles F. Lounsberry, after the written lease of the land was made, in 1917, were not operating under the oral contract. If appellants have any remedy at all against the estate of Ricker for services rendered to him and for which they have not been paid they have an ample remedy at law. Miles F. Lounsberry has in his possession perhaps as much as $2000 or more of the money of the deceased that was conceded on the trial to be due and owing and unpaid to Ricker. In any suit against him for such money he has a complete remedy at law by set-off for any just claim he may have, and the amount that he owes the estate is amply sufficient to cover all money demands for actual services rendered by him, at reasonable rates for service. He rendered most all, if not all, of the services to Ricker. Appellants have shown no legal right for specific performance of the oral contract which they proved was made in 1915 with Ricker. Specific performance of a contract rests largely in the sound discretion of the court in any case, and is to be determined from all of the facts and circumstances. (*Adams* v. *Larson,* 279 Ill. 268.) There is no reasonable ground for the claim of appellants that a denial of the specific performance of the contract in question would work a fraud upon them. They have shown no right to specific performance whatever, and the court did not err in dismissing their bill for want of equity.

The decree of the circuit court is affirmed.

*Decree affirmed.*